**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAURA OUELLETTE, | ) | CASE NO. 1:25-cv-01841-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CARMEN E. HENDERSON |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Laura Ouellette ("Ouellette" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and OVERRULES Plaintiff's Statement of Errors.

## II. Procedural History

On April 25, 2023, Claimant filed an application for DIB, and on November 3, 2023, Claimant filed an application for SSI. (ECF No. 9, PageID #: 264–70, 271–77). Claimant alleged a disability onset date of February 14, 2023, a date last insured on December 31, 2028, and she was disabled due to arthritis, pain in her collar bone, bladder issues, and issues with uterus. (ECF No. 9, PageID #: 264, 266, 278, 325). The applications were denied initially and upon

1

reconsideration, and Ouellette requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 153–57, 166–68, 170–72, 181–82).  On October 3, 2024, an ALJ held a hearing, during which Ouellette, represented by counsel, and an impartial vocational expert ("VE") testified.  (ECF No. 9, PageID #: 63–91).  On October 16, 2024, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 9, PageID #: 37–58). The ALJ's decision became final on July 15, 2025, when the Appeals Council declined further review. (ECF No. 9, PageID #: 28–33).

On December 30, 2025, Claimant filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 10, 11). Claimant asserts the following assignments of error:

I. Whether the ALJ failed to provide a logical bridge between the evidence and the RFC assessment on standing and walking;
II. Whether the ALJ improperly evaluated Ms. Ouellette's pain under SSR 16-3p; and
III. Whether the ALJ committed reversible error by completely omitting any consideration of Ms. Ouellette's hand impairment.

(ECF No. 10, at 1).

## III. Background

### A.  Relevant Hearing Testimony

On October 3, 2024, an ALJ held a hearing, during which Ouellette, represented by counsel, and an impartial vocational expert testified.  (ECF No. 9, PageID #: 63–91). During the hearing, the ALJ asked Ouellette to explain the basis for her claim that she was disabled after February 14, 2023. (ECF No. 9, PageID #: 81). Ouellette testified that due to difficulties with her back and hips, she struggles with carrying bags, walking upstairs, completing her laundry, vacuuming, sweeping, sitting, standing, bending, and stretching. (ECF No. 9, PageID #: 81, 82). She also testified that she lives alone, grocery shops for herself, and prepares her own meals. (ECF No. 9, PageID #: 68,

2

84, 85).

Concerning treatment, Ouellette testified that she attends physical therapy and sees a pain management doctor for her hips. (ECF No. 9, PageID #: 82). She further testified that she takes ibuprofen as she is against taking "powerful, potent medication." (ECF No. 9, PageID #: 81). Yet, Ouellette noted the ibuprofen is "not working." (ECF No. 9, PageID #: 81). Ouellette also testified that she takes lidocaine patches for pain in her back and hips as well as arthritis creams. (ECF No. 9, PageID #: 83). Finally, Ouellette noted that she was in the process of obtaining a diagnosis for difficulties with her hands, "[w]ell, I am in the middle, now – also as well, your honor – of getting my wrists and my hands checked out for carpal tunnel. I'm not sure of any kind of diagnosis yet. I was sent for a X-ray on my hands. At that time, my hands didn't show anything significant." (ECF No. 8, PageID#: 83).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

Here, the claimant has alleged disability because of problems with her hips and back, and because of arthritis in her back and hips, pain in her collar bone, and issues involving her bladder and uterus, and blurred vision (see Exs. 4E, p. 2; 4F; and the claimant's hearing testimony). The claimant also described herself at the time of her application as being 64 inches tall and weighing 180 pounds (see Ex. 4E, p, 2), which is in the mild obesity range. In addition to the claimant's allegations, I have also considered all the medical evidence. Significantly, the claimant has not had any substantial treatment since the February 14, 2023, alleged onset date for her back and hip complaints, or for her gynecological complaints.

In addition, testing on March 5, 2024, showed the claimant has 20/20 corrected vision in both eyes (see Ex. 4F). Additional significant evidence includes radiological reports that have been interpreted as showing mild lumbar degenerative disc disease and mild degenerative joint disease in both hips (see Exs. 3F and 7F).

The claimant also described herself at the time of her application as being 64 inches tall and weighing 180 pounds (see Ex. 4E, p, 2), which is in the mild obesity range. In addition to the claimant's allegations, I have also considered all the medical

3

evidence. Significantly, the claimant has not had any substantial treatment since the February 14, 2023, alleged onset date for her back and hip complaints, or for her gynecological complaints. In addition, testing on March 5, 2024, showed the claimant has 20/20 corrected vision in both eyes (see Ex. 4F). Additional significant evidence includes radiological reports that have been interpreted as showing mild lumbar degenerative disc disease and mild degenerative joint disease in both hips (see Exs. 3F and 7F).

I have again considered the fact the claimant has not received any substantial treatment since the February 14, 2023, alleged onset date for her back and hip complaints, or for her gynecological complaints. I have also again considered the fact testing on March 5, 2024, showed the claimant has 20/20 corrected vision in both eyes (see, again, Ex. 4F). Also militating against a more restricted residual functional capacity is the fact the claimant has mild lumbar degenerative disc disease and mild degenerative joint disease in both hips (see, again, Exs. 3F, p. 14; and 7F, pps. 4 and 5).

The remainder of the objective medical evidence also does not support disabling problems. To this point, I note,

- The claimant was described on February 8, 2023, as having a normal gait, normal range of motion, intact neurological signs, and normal strength (see Ex. 1F, p. 5).
- The claimant was described on April 4, 2023, as being 64 inches tall and weighing 190 pounds (32.72 body mass index).
- The claimant was described on April 18, 2023, as being neurologically intact, and as having normal spinal motion, a normal gait, normal sensation, and normal reflexes (see Ex. 3F, pps. 13 and 14).
- More recently, on March 29, 2024, the claimant was described as having a normal gait, normal muscle strength, and normal sensation (see Ex. 6F, p. 8).
- Similarly, the claimant was described on May 28, 2024, as having a normal gait and normal muscle strength (see Ex. 7F, p. 7).

(ECF No. 9, PageID #: 55–56).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. The claimant has not engaged in substantial gainful activity since February 14, 2023, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

4

3. The claimant has the following severe impairments: lumbar degenerative disc disease, degenerative joint disease in both hips, and mild obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) provided she does not have to push/pull with her lower extremities more than frequently, and provided she does not have to climb ramps, stairs, ladders, ropes, or scaffolds more than occasionally; and provided she does not have to stoop, kneel, or crawl more than frequently, and provided she does not have to crouch more than occasionally, and provided she does not have to work around hazards (unprotected heights/dangerous machinery).

6. The claimant can perform past relevant work as an electronics assembler because, as generally performed, this work would not require her to perform work-related activities precluded by her residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2023, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(ECF No. 9, PageID #: 53–57).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal. First, Claimant asserts that the ALJ failed to provide a logical bridge between the evidence and the RFC assessment regarding standing and walking. (ECF No. 10, at 1). Next, Claimant contends the ALJ improperly evaluated Ouellette's pain under SSR 16-3p. (ECF No. 10, at 1). Finally, Claimant argues the ALJ committed reversible error by completely omitting any consideration of Ouellette's hand impairment. (ECF No. 10, at 1). The Court addresses each issue below.

### i. The ALJ's Walking and Standing Limitations are Supported by Substantial Evidence.

As noted above, Claimant contends that the ALJ failed to build a logical bridge between the evidence and the resulting RFC assessment regarding standing and walking. (ECF No. 10, at 1). To support this argument, Ouellette states, "[t]he ALJ's conclusion that [Claimant] could perform light work ignores substantial evidence showing that her chronic back and hip pain made prolonged standing and walking impossible. By failing to reconcile these medical findings with the RFC assessment, the ALJ left a critical gap in reasoning that undermines the decision." (ECF No. 10, at 8). Additionally, Ouellette presents evidence that she believes establishes her inability to perform light work including, pain in her back, hips, and left leg, tenderness of her back and hips, decreased range of motion of spine and hips, hip crepitus, positive straight leg raises, decreased lower extremity strength, decreased sensation, and abnormal toe and heel walking. (ECF No. 10, at 9; ECF No. 9, PageID #: 380–81, 403, 455, 460–61, 522, 572, 612, 621, 404, 458, 462, 623–24).

Ouellette offers additional evidence contending, "[x-rays] revealed mild degenerative changes in the lumbar spine (citation omitted) and bilaterial hip joint narrowing with osteophytes and sclerosis (citation omitted)." (ECF No. 10, at 9; ECF No. 9, PageID #: 467, 638, 478, 634,

636).  Moreover, Claimant asserts that the above findings establish that she could not stand or walk

for the six-to-eight-hour period required at the light work exertional level. (ECF No. 10, at 9).

In response, the Commissioner asserts, "[s]ubstantial evidence supports the ALJ's

determination that Plaintiff could perform the standing/walking requirements of light work. The

ALJ explained that both the objective evidence and prior administrative medical findings

supported a limitation to light work." (ECF No. 11, at 4). The Commissioner further contends,

> In making this [RFC] determination, the ALJ explained that the record showed
> Plaintiff regularly had a normal gait, full strength in her legs, no swelling in her
> legs, normal sensation, normal reflexes, no motor weakness, negative straight leg
> raise testing, and imaging of her hips and lower back showed only mild
> degenerative changes. Tr. 28-29 (citing Tr. 354-55, 431-31, 497, 549). The ALJ
> also noted that Plaintiff only received conservative treatment for her hip and back
> pain that generally consisted of physical therapy, ibuprofen, and lidocaine patches
> while never requiring an assistive device for walking or surgery.

(ECF No. 11, at 4). This Court agrees with the Commissioner.

Prior to determining that Ouellette could perform light work at Step Four, the ALJ

determined Ouellette's RFC. (ECF No. 9, PageID #: 54). The RFC determination sets out an

individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). The

ALJ formulated an RFC determining that Ouellette had the ability to,

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) provided
> she does not have to push/pull with her lower extremities more than frequently, and
> provided she does not have to climb ramps, stairs, ladders, ropes, or scaffolds more
> than occasionally; and provided she does not have to stoop, kneel, or crawl more
> than frequently, and provided she does not have to crouch more than occasionally,
> and  provided  she  does  not  have  to  work  around  hazards  (unprotected
> heights/dangerous machinery).

(ECF No.  9, PageID #: 54). In determining the adequacy of the ALJ's RFC determination,

a reviewing court must focus on the explanation given by the ALJ's decision without finding

further support in the records not specifically included in the decision. *See Ripley v. Comm'r of*

8

*Soc. Sec.,* 415 F. Supp. 3d 752, 764 (N.D. Ohio 2019) ("In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence de novo, make credibility determinations, or weigh the evidence"). In her formulation of the RFC, the ALJ considered that Claimant demonstrated a normal gait, full strength in her legs, no swelling in her legs, normal sensation, normal reflexes, no motor weakness, and negative straight leg raise testing. (ECF No. 9, PageID #: 55–56; citing ECF No. 9, PageID #: 381–82, 458, 524, 576). The ALJ noted that Claimant underwent conservative treatment that generally consisted of physical therapy, ibuprofen, and lidocaine patches. (ECF No. 9, PageID #: 56; citing ECF No. 9, PageID #: 458, 576). The ALJ also emphasized that Claimant did not require narcotic pain medication, the use of an assistive device, or surgery, and that there were no documented material side effects from her medication. (ECF No. 9, PageID #: 56). In her RFC determination regarding Claimant's standing and walking limitations, the ALJ considered medical and non-medical evidence, including Claimant's self-described limitations, and objective medical evidence. Thus, the ALJ's findings are supported by substantial evidence.

Moreover, the ALJ considered State agency physical consultants' opinions in her formulation of the RFC. (ECF No.  9, PageID #: 54). Courts in this Circuit find that State agency physical consultants' opinions may constitute substantial evidence supporting an ALJ's decision. *See Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue,* 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *see also Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to

support the finding that plaintiff can perform a limited range of light work.")*. In the instant case, the prior consultants concluded Claimant could perform light exertional level work, including the ability to stand and walk for six to eight hours at a time and the ALJ found their opinions persuasive. (ECF No.  9, PageID #: 54). Therefore, the State agency physical consultants' opinions are substantial evidence further supporting the ALJ's RFC determination regarding Claimant's standing and walking limitations.

However, Claimant asserts that the ALJ's failure to adopt the state agency physicians' limitation that Ouellette avoid walking on wet, slippery, or uneven surfaces is reversible error requiring remand. (ECF No. 10, at 10). Specifically, Claimant contends "the ALJ claimed the state agency physicians' opinions were persuasive but ignored their limitation that Ms. Ouellette avoid walking on wet, slippery, or uneven surfaces." (ECF No. 10, at 10). An ALJ need not address every piece of evidence in the record or provide an explanation for every limitation she chooses to adopt or not adopt. *See Hoffer v. Commr. Of Social Sec.*, 2022 WL 584666, *6 (N.D. Ohio Feb. 11, 2022), *report and recommendation adopted*, 2022 WL 580756 (N.D. Ohio Feb. 25, 2022). Yet, there needs to be a logical bridge between the evidence and the ALJ's conclusion. *Id.* Here, the Court agrees despite finding the state agency opinions persuasive the ALJ did not adopt the limitation regarding avoiding walking on wet, slippery, or uneven surfaces. Moreover, the Court notes that the ALJ did not provide a logical bridge for the court to determine whether she "ignored" the limitation or whether she purposefully chose not to adopt it. (ECF No. 9, PageID #: 54, 118). Thus, this is error.

Nevertheless, the error is harmless as whether claimant can perform light work as noted in the RFC is irrelevant to the ALJ's conclusion that Claimant can perform past relevant work. *See Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 863-64 (6th Cir. 2018). The ALJ asked the

VE whether an individual of Claimant's age, education, work experience, and limitations the ALJ adopted into the RFC could perform Claimant's past relevant work and the VE indicated they could perform the work as an electronic assembler as actually performed. (ECF No. 9, PageID #: 88-89). Thus, the ALJ found that based on Claimant's limitations, she could perform her past relevant work. (*Id.* at PageID #: 57). The VE's testimony is substantial evidence to support the ALJ's conclusion. (*Id.* at PageID #: 57). Importantly, Claimant bears the burden of showing that she cannot perform her past relevant work. *See* 20 C.F.R. § 404.1512(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, when presented with an opportunity to question the VE, Claimant's counsel only asked about off-task behavior and absenteeism without addressing the limitation regarding walking on wet, slippery, or uneven surfaces. (*Id.* at PageID #: 90). Nor has she advanced any argument before this Court that such a limitation would prevent her from performing her past relevant work. Thus, the ALJ's omission of this limitation is harmless error. Thus, as discussed above, the standing walking limations in the RFC are supported by substantial evidence.

**ii.      The ALJ Properly Evaluated Claimant's pain pursuant to SSR 16-3p.**

Claimant's second assignment of error contends the ALJ erred in her assessment of Ouellette's pain. (ECF No. 10, at 10).  Specifically, Claimant argues, "the ALJ discounted [Claimant's pain] without meaningfully engaging with the evidence that consistently documented its severity and functional impact. Rather than conducting the analysis required by SSR 16-3p, the ALJ selectively cited normal findings while ignoring substantial evidence supporting Ms. Ouellette's pain complaints." (ECF No. 10, at 10). This Court does not find Claimant's arguments persuasive.

When evaluating subjective complaints, an ALJ must look to medical evidence, statements

11

by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*: *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

In evaluating Ouellette's RFC, the ALJ considered Claimant's subjective complaints regarding her pain. She detailed,

> Here, the claimant has alleged disability because of problems with her hips and back, and because of arthritis in her back and hips, pain in her collar bone, and issues involving her bladder and uterus, and blurred vision (see Exs. 4E, p. 2; 4F; and the claimant's hearing testimony). The claimant also described herself at the time of her application as being 64 inches tall and weighing 180 pounds (see Ex. 4E, p, 2), which is in the mild obesity range.

(ECF No. 9, PageID #: 55). Moreover, the ALJ explained that the objective medical evidence did not support disabling problems. (ECF No. 9, PageID #: 56). Specifically, the ALJ noted that Claimant demonstrated a normal gait, full strength in her legs, no swelling in her legs, normal sensation, normal reflexes, no motor weakness, and negative straight leg raise testing. (ECF No.

12

9, PageID #: 55–56; citing ECF No. 9, PageID #: 381–82, 458, 524, 576). The ALJ also observed that imaging of Claimant's hips and lower back showed only mild degenerative changes. (ECF No. 9, PageID #: 55). The ALJ then detailed Claimant's treatment history, including the effectiveness of treatments, and treatment other than medication. (ECF No. 9, PageID #: 56). The ALJ noted that Claimant underwent conservative treatment that generally consisted of physical therapy, ibuprofen, and lidocaine patches. (ECF No. 9, PageID #: 56; citing ECF No. 9, PageID #: 458, 576). The ALJ also emphasized that Claimant did not require narcotic pain medication, the use of an assistive device, or surgery, and that there were no documented material side effects from her medication. (ECF No. 9, PageID #: 56). Additionally, the ALJ found the opinions of the State agency physicians to be persuasive and adopted their light work with postural and environmental limitations into the RFC. (ECF No. 9, PageID #: 56–57).

> Finally, the ALJ considered Claimant's activities of daily living. The ALJ noted,
>
> The claimant's activities of daily living since the February 14, 2023, alleged onset date further support the assessed residual functional capacity. Indeed, the claimant received substantial wages in both July 2023 and August 2023, and she worked as a cleaner during the fourth quarter of 2023 and the first quarter of 2024 (see Ex. 4E, p. 3). The claimant has also been able to live by herself (see Ex. 3A). The claimant further described a typical day as consisting of sitting for an hour or two after she woke up drinking coffee and watching television. (Id.). The claimant then said she performs some chores like cleaning, washing dishes, washing clothes, and cooking. (Id.). The claimant also reported shopping in stores and using public transportation, and she said she had to walk to get to her bus stop. (Id.)

(ECF No. 9, PageID #: 56). The ALJ considered claimant's ability to earn substantial wages in both July 2023 and August 2023 as well as her work as cleaner in late 2023 and early 2024. (ECF No. 9, PageID #: 56). The ALJ also considered Claimant's testimony that she lives on her own, takes public transportation, washes dishes, cleans, cooks, watches television, drinks coffee, and shops independently. (ECF No. 9, PageID #: 56); (ECF No. 9, PageID #: 68, 81, 82, 84, 85). The ALJ then concluded,

13

> In summary, in assessing the claimant's residual functional capacity, I have considered all the claimant's impairments, the subjective complaints that can reasonably be expected to be caused by them, and all the medical and non-medical evidence including all medical opinions. However, I conclude the medical and lay evidence taken whole does not support finding the claimant's impairments and associated symptoms have caused, over any continuous 12-month period relevant to this decision, any additional or greater work-related limitations.

(ECF No. 9, PageID #: 57). The ALJ's explanation makes clear that the ALJ found Claimant's testimony regarding her self-reported pain, not credible based on the proper factors, including the objective medical evidence, State agency physician opinions, Claimant's daily activities, and Claimant's conservative treatments. *See* SSR 16-3p, 2017 WL 5180304, at \*7-8. Therefore, substantial evidence supports the ALJ's findings regarding Claimant's pain.

However, Claimant again offers additional evidence of Claimant's pain that she believes necessitates remand. (ECF No. 10, at 11–12). She contends,

> [I]gnored evidence included tenderness of the back and hips (A.R. 377, 431, 435, 497, 596-597), decreased range of motion of the spine and hips (A.R. 377, 435, 596, 597), hip crepitus (A.R. 377), positive straight leg raise testing (A.R. 377, 435, 497), decreased sensation in the lower extremities (A.R. 435), abnormal toe and heel walking (A.R. 435), and decreased strength (A.R. 597).

(ECF No. 10, at 11–12). Claimant points to several treatment records not cited by the ALJ in his determination to rebut the ALJ's conclusion. (ECF No. 10, at 11–12). Specifically, she cites to evidence that she believes show tenderness of the back and hips (ECF No. 9, PageID #: 404, 458, 462, 524, 623–24), decreased range of motion of the spine and hips (ECF No. 9, PageID #: 404, 462, 623, 624), hip crepitus (ECF No. 9, PageID #: 404), positive straight leg raise testing (ECF No. 9, PageID #: 404, 462, 524), decreased sensation in the lower extremities (ECF No. 9, PageID #: 462), abnormal toe and heel walking (ECF No. 9, PageID #: 462), and decreased strength (ECF No. 9, PageID #: 624).

However, the additional medical records cited by Claimant do not undermine the ALJ's

14

conclusion. Although the ALJ did not expressly discuss each record cited by Claimant, an ALJ is not required to address every piece of evidence contained in the administrative record. *See Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 U.S. App. LEXIS 14028 *15 (6th Cir. June 6, 2025). Rather, the ALJ's decision must demonstrate that he considered the record as a whole and that his conclusions are supported by substantial evidence. A reviewing court may not reweigh the evidence or resolve conflicts in the record, as those tasks are reserved to the Commissioner. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  If substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Here, the ALJ expressly noted Claimant's complaints of back and hip pain and discussed the objective medical evidence relating to her musculoskeletal impairments. (ECF No. 9, PageID #: 55–56). The ALJ's decision reflects consideration of physical examination findings, diagnostic imaging, Claimant, daily activities, State physician opinions, and Claimant's course of treatment in formulating the residual functional capacity. (ECF No. 9, PageID #: 55–56). While Claimant highlights several examination findings that could support her position, the presence of some abnormal findings does not compel a different conclusion where the record also contains evidence supporting the ALJ's assessment. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted). Thus, the ALJ's consideration of Claimant's subject symptoms and pain is supported by substantial evidence.

15

### iii.    The ALJ did not err in her discussion of Claimant's hand impairment.

Finally, Ouellette asserts the ALJ erred in her Step Two analysis by "entirely ignor[ing] a medically documented hand impairment that was supported by objective imaging and claimant testimony." (ECF No. 10, at 13). Ouellette points to her hearing testimony and objective medical evidence in the record including an X-ray of her hands. (ECF No. 10, at 13) (citing ECF No. 9, PageID #: 83, 544–45).

In response, the Commissioner argues that Claimant has not carried her burden to prove that she had a hand impairment that caused restrictions. (ECF No. 11, at 8). The Commissioner then points to record evidence including, Claimant's hearing testimony, lack of treatment, state agency reviewing physicians' findings, Claimant's daily activities, and lack of evidence of the impairment in the administrative record. (ECF No. 11, at 8) (citing ECF No. 8, PageID #: 83, 325, 102, 56).

The Court agrees. Claimant has not met her burden to establish her hand impairment. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Moreover, Claimant bears the burden of proof at step two of the sequential analysis in establishing a severe impairment. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009). The record does not contain a formal diagnosis regarding Claimant's hand impairment. Claimant's hearing testimony reflects this, "[w]ell, I am in the middle … of getting my wrists and my hands checked out for carpal tunnel. I'm not sure of any kind of diagnosis yet. I was sent for a [sic.] X-ray on my hands. At that time, my hands didn't show anything significant." (ECF No. 9, PageID

16

#: 83). Thus, Claimant conceded in her hearing testimony that she did not have a medical diagnosis or medical source opinion concerning her hand impairments. Additionally, as noted by the Commissioner, in November 2023, eight months after her alleged disability onset, Claimant was asked on an Agency form to list "all of the physical … conditions that limit your ability to work," yet she did not report any hand impairment. (ECF No. 9, PageID #: 325). Consequently, the ALJ was not required to include Claimant's hand impairment symptoms in the RFC determination. *Kelley v. Comm'r of Soc. Sec.*, No. 1:24-cv-506, 2025 U.S. Dist. LEXIS 131454 (W.D. Mich. July 10, 2025) (holding the ALJ was not required to include Claimant's impairment in the RFC as the record contained no formal diagnosis). Therefore, the ALJ did not err in her Step Two analysis and remand is not warranted.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits.  Plaintiff's Complaint is DISMISSED.

Dated: March 20, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE